UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| FANG LIU, on behalf of Nominal Defendant Dendreon Corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>MITCHELL H. GOLD, GREGORY T. SCHIFFMAN, HANS E. BISHOP, SUSAN B. BAYH, RICHARD B. BREWER, GERARDO CANET, PEDRO GRANADILLO, DAVID C. STUMP, DAVID L. URDAL, and DOUGLAS G. WATSON,<br><br>            Defendants,<br><br>    —and—<br><br>DENDREON CORPORATION,<br><br>            Nominal Defendant. | Case No.<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

VERIFIED SH'HOLDER DERIV. COMPLAINT

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1    This is a shareholder derivative action brought by Plaintiff on behalf of Dendreon

2 Corporation ("Dendreon " or the "Company") against certain current or former officers and

3 directors of Dendreon seeking to remedy their violations of state law, including but not limited

4 to breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate

5 assets, unjust enrichment, and misappropriation that occurred from January 7, 2011 through the

6 present, (the "Relevant Period") and that have caused substantial losses to the Company.[1]

7                              **JURISDICTION AND VENUE**

8        1.      The Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(2) in that

9 Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds

10 $75,000 exclusive of interest and costs.

11       2.      This action is not a collusive one designed to confer jurisdiction on a court of the

12 United States that it would otherwise not have.

13       3.      Venue is proper in this District because a substantial portion of the transactions

14 and wrongs complained of herein occurred in this District.  Certain Defendants either reside in or

15 maintain executive offices or participated in board meetings or Company business in this District

16 and have received substantial compensation in this District by engaging in numerous activities

17 and conducting business here.

18                                    **PARTIES**

19       4.      Plaintiff Fang Liu ("Liu" or "Plaintiff"), as set forth in the accompanying

20 Verification, is and was during the Relevant Period a shareholder of Dendreon.  Plaintiff is a

21 citizen of Fairfax County, Virginia.

22       5.      Nominal Defendant Dendreon Corporation is a Delaware corporation with its

23 principal place of business at 3005 First Avenue, Seattle, Washington 98121. According to the

24 Company's profile, Dendreon is a biotechnology company that engages in the discovery,

---

[1]     Because Defendants have failed to take action to remedy the breaches of fiduciary duties
that occurred between January 7, 2011 and August 3, 2011, the Relevant Period continues
through this day instead of ceasing on August 3, 2011, the day the public became aware of the
wrongdoings at the Company.

VERIFIED SH'HOLDER DERIV. COMPLAINT      - 1 -

development, and commercialization of therapeutics to enhance the treatment of cancer. The Company offers active cellular immunotherapy ("ACI") and small molecule product candidates to treat various cancers. The Company's principal product is Provenge (sipuleucel-T), an active cellular immunotherapy for the treatment of metastatic, castrate-resistant prostate cancer.

6.     Defendant Mitchell H. Gold ("Gold") is, upon information and belief, a citizen of the State of Washington. He is, and was during the Relevant Period, Chief Executive Officer, President of the Company, and a member of the Board of Directors of Dendreon. During the Relevant Period, defendant Gold signed and certified the Company's SEC filings. Also, during the Relevant Period, while in possession of material adverse non-public information, defendant Gold sold over 128,000 shares of his privately held Company stock to reap illicit gross proceeds of over $4.85 million.

7.     Defendant Gregory T. Schiffman ("Schiffman") is, upon information and belief, a citizen of the State of Washington. He is, and was during the Relevant Period, Chief Financial Officer and Executive Vice President of the Company. During the Relevant Period, defendant Schiffman signed and certified the Company's SEC filings. Also, during the Relevant Period, while in possession of material adverse non-public information, defendant Schiffman sold over 3,900 shares of his privately held Company stock to reap illicit gross proceeds of over $156,000.

8.     Defendant Hans E. Bishop ("Bishop") is, upon information and belief, a citizen of the State of Washington. He is, and was during the Relevant Period, Chief Operating Officer and Executive Vice President of the Company. During the Relevant Period, defendant Bishop signed the Company's SEC filings.

9.     Defendant Susan B. Bayh ("Bayh") is, upon information and belief, a citizen of the State of Indiana.  She has been a member of the Board of Directors of Dendreon since July 2003. Defendant Bayh is a member of the Dendreon Board's Corporate Governance Committee and Compensation Committee.

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 732-3752

1      10.    Defendant Richard B. Brewer ("Brewer") is, upon information and belief, a

2  citizen of the State of Colorado.  He has been Chairman of the Board of Directors of Dendreon

3  since June 2004, and a member of the Board of Directors since February 2004.

4      11.    Defendant Gerardo Canet ("Canet") is, upon information and belief, a citizen of

5  the State of New York.  He has been a member of the Board of Directors of Dendreon since

6  December 1996.  Defendant Canet is the chair of the Dendreon Board's Compensation

7  Committee and is a member of the Audit Committee. During the Relevant Period, while in

8  possession of material adverse non-public information, defendant Canet sold 5,000 shares of his

9  privately held Company stock to reap illicit gross proceeds of over $206,000.

10      12.    Defendant Pedro Granadillo ("Granadillo") is, upon information and belief, a

11  citizen of the State of Indiana.  He has been a member of the Board of Directors of Dendreon

12  since October 2009. Defendant Granadillo is a member of the Dendreon Board's Audit

13  Committee and Compensation Committee.

14      13.    Defendant David C. Stump ("Stump") is, upon information and belief, a citizen of

15  the State of Maryland.  He has been a member of the Board of Directors of Dendreon since June

16  2010. Defendant Stump is a member of the Dendreon Board's Corporate Governance

17  Committee.

18      14.    Defendant David L. Urdal, Ph.D. ("Urdal" or "Dr. Urdal") is, upon information

19  and belief, a citizen of the State of Washington.  He is, and was during the Relevant Period, the

20  Executive Vice President and Chief Scientific Officer of the Company and a member of the

21  Board of Directors. Urdal has served as Dendreon's Chief Scientific Officer since joining the

22  Company in 1995.  Urdal assumed the position of Executive Vice President in June December

23  2010. Prior to that, he was Senior Vice President. In January 2006, Dr. Urdal assumed oversight

24  of manufacturing operations for the Company. During the Relevant Period, while in possession

25  of material adverse non-public information, defendant Urdal sold over 111,000 shares of his

26  privately held Company stock to reap illicit gross proceeds of over $4.04 million.

27

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

15.     Defendant Douglas G. Watson ("Watson") is, upon information and belief, a citizen of the State of New Jersey.  He has been a member of the Board of Directors of Dendreon since February 2000.  Defendant Watson is the Chairman of the Dendreon Board's Audit Committee.

16.     Defendants Gold, Schiffman, Bishop, Bayh, Brewer, Canet, Dziurzynski, Granadillo, Stump, Urdal and Watson are referred to herein as the "Individual Defendants." Defendants Gold, Bayh, Brewer, Canet, Dziurzynski, Granadillo, Stump, Urdal and Watson are referred to herein as the "Director Defendants."

17.     Each of the defendants is liable as a participant in a common course of business involving dissemination of materially false and misleading statements and/or concealing material adverse facts.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

18.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

19.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

20.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the Individual Defendants were required to, among other things:

    a.     exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b.     exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

    c.     when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise diligence and good faith in taking action to correct the misconduct and prevent its recurrence.

21.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

22.     Each of the above officers of Dendreon, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

defendants were involved in drafting, producing, reviewing, and/or disseminating the statements and information alleged herein, were aware, or deliberately disregarded, that the statements were being issued regarding the Company, and approved or ratified these statements.

23. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act and, during the Relevant Period, was traded on the Nasdaq National Market Exchange (the "Nasdaq") and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue.

24. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or deliberately disregarded, the statements contained therein and omissions therefrom. Because of their Board membership and/or executive and managerial positions with Dendreon, each of the Individual Defendants had access to the adverse undisclosed information about Dendreon's business prospects and financial condition and performance as particularized herein and knew (or deliberately disregarded) the effect of these adverse facts on the positive representations made by or about Dendreon.

25. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Relevant Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

Law Offices of
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

# SUBSTANTIVE ALLEGATIONS

## Defendants' Statements

26.     Defendant Dendreon Corporation is a biotechnology Company actively engaged in developing and commercialization of therapies for cancer.  Its lead and most advanced product is Provenge.

27.     At all relevant times, Defendants described Provenge (sipuleucel-t) as the Company's lead product. Provenge is an active cellular immunotherapy ("ACI") for the treatment of asymptomatic, metastatic, androgen-independent prostate cancer, the third most common cancer worldwide and the number one non-skin cancer in the United States.

28.     On November 9, 2006, Dendreon submitted a Biologics License Application ("BLA") for Provenge to the United States Food and Drug Administration ("FDA").  The FDA granted the Provenge BLA Priority Review status, which meant that the FDA would reach and announce a decision whether to approve Provenge on or before May 15, 2007.

29.     In mid-February 2007, the FDA conducted a Chemistry, Manufacturing & Controls ("CMC") inspection of Dendreon's New Jersey manufacturing facilities and issued to the Company an FDA Form 483, Inspectional Observations Report, detailing multiple "significant objectionable conditions" observed at those facilities.  The issuance of the Form 483 to Dendreon was a material adverse event for the Company in light of all of the facts and circumstances of its issuance, including, among other things, the enormous significance to the Company and investors in its stock of Dendreon obtaining FDA approval to commercialize Provenge by the May 15, 2007 deadline for action.  Until those "significant objectionable conditions" were resolved to the FDA's satisfaction, defendants could not obtain FDA approval of Provenge and, consequently, could not market Provenge.

30.     The failure of Dendreon's then officers and directors (many of whom are named as defendants herein) to timely disclose the FDA Form 483 led to the filing of a previous securities class action and related litigation. Gold and Urdal were both Defendants in the earlier litigation.

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

31.     On January 7, 2011, Defendants published a press release and filed a Form 8-K stating that the Company had successfully introduced its chief product, Provenge, and was poised for significant growth. The release stated in part:

"Last year was foundational for Dendreon with the successful introduction of PROVENGE as the world's first autologous cellular immunotherapy," said Mitchell H. Gold, MD, president and chief executive officer. "As we look to 2011 and beyond, we are positioned for significant growth with our increased capacity in the U.S., our European strategy for filing now set, and our progress in advancing our ACI pipeline in bladder cancer. Most importantly, we are proud to deliver on our commitment to transform the lives of patients with cancer by making PROVENGE more broadly available in the U.S. and abroad."

32.     In addition to the press release, on January 7, 2011, the Company held a conference call with shareholders to discuss the introduction and development of Provenge, in which Gold stated, in part, that:

In 2011, we will turn the volume up on our awareness efforts to ensure that we are maximizing our available capacity. Importantly we are proud about the quality of our interactions with the physicians. Based on a survey commissioned, the overall experience with PROVENGE has been positive. On a scale of 7, the average score was 5.5 on overall satisfaction, 5.6 on likelihood of using the product again, 5.6 on the likelihood of recommending the use of the product, and 5.7 for ease of logistics. We are reiterating our 2011 revenue guidance to be approximately $350 to $400 million, with approximately half that occurring in the fourth quarter.

33.     On March 10, 2011, defendants published a release that conditioned investors to believe that the Company was successfully implementing the launch of its chief product Provenge. This release stated, in part, the following:

Dendreon Expands Launch of PROVENGE

FDA Approval of Additional 36 Workstations in New Jersey Manufacturing Facility Provides Increased Availability of First-in- Class Prostate Cancer Immunotherapy PROVENGE

SEATTLE, March 10, 2011 /PRNewswire/ -- Dendreon Corporation (Nasdaq: DNDN) announced today that the U.S. Food and Drug Administration (FDA) approved the remainder of its New Jersey manufacturing facility, allowing the

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

company to significantly increase the availability of PROVENGE® (sipuleucel-T) to help meet the needs of patients with asymptomatic or minimally symptomatic metastatic castrate resistant (hormone refractory) prostate cancer.

Last April, upon receiving FDA approval of PROVENGE, Dendreon launched the world's first patient-specific prostate cancer immunotherapy from 12 workstations in its New Jersey facility. With the FDA approval of 36 additional workstations, the New Jersey facility will now have a total of 48 approved workstations. Dendreon will bring these new workstations online in a staged approach.

PROVENGE is designed to induce an immune response against prostatic acid phosphatase (PAP), an antigen expressed in most prostate cancers, and is the first in a new therapeutic class of drugs known as autologous cellular immuno-therapies.

"PROVENGE has the largest reported survival benefit in patients with asymptomatic or minimally symptomatic metastatic prostate cancer, with the most common side effects being primarily transient and mild to moderate. As such, PROVENGE is the standard of care for these patients," said Daniel George, M.D., director of GU Medical Oncology and the Prostate Clinic at Duke University Medical Center. "The increased availability of PROVENGE will allow more treatment centers and patients across the country to access this important treatment option."

In anticipation of the availability of the additional workstations, Dendreon expects to have approximately 225 infusion centers prepared to treat their first patient by the end of the second quarter, approximately 450 infusion centers upon entering the fourth quarter, and approximately 500 by the end of 2011.

34.     In addition to the foregoing, again conditioning investors to believe that Provenge was being accepted by the medical community according to plan, defendant Gold used the March 10, 2011 release as follows:

"The significant 4.1 month median survival benefit PROVENGE demonstrated represents a major milestone in the treatment of metastatic CRPC. To put PROVENGE in perspective, over the past 15 years, there have only been three other therapies in any metastatic cancer setting to show a survival benefit of four months or more," said Mitchell H. Gold, M.D., president and chief executive officer of Dendreon. "With FDA approval of the additional NJ workstations, we now have significant capacity to make this important therapy available to the many men across the U.S. who may benefit from it."

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

35. On May 2, 2011, defendants published a release announcing purported results for the first quarter of 2011, the period ended March 31, 2011. This release again guided investors to believe that the roll-out of Provenge was proceeding according to plan, in part, as follows:

Dendreon Reports First Quarter 2011 Financial Results

SEATTLE, May 2, 2011 /PRNewswire/ -- Dendreon Corporation (Nasdaq: DNDN) today reported results for the first quarter ended March 31, 2011. Revenue for the quarter ended March 31, 2011 was $28.1 million compared to $21,000 for the quarter ended March 31, 2010.

The GAAP net loss for the quarter ended March 31, 2011 was $111.8 million, or $0.77 per share, compared to $125.7 million, or $0.96 per share for the quarter ended March 31, 2010 (which included a non-cash charge of $68 million loss from valuation of warrant liability). On a pro-forma basis, excluding non-cash expenses associated with depreciation and amortization, non-cash imputed interest expense, and non-cash deferred stock compensation, Dendreon's net loss was approximately $85 million or $0.59 per share. Dendreon's total operating expenses for the quarter ended March 31, 2011 were $112.9 million compared to $57.6 million for the three months ended March 31, 2010.

As of March 31, 2011, Dendreon had approximately $779.0 million in cash, cash equivalents, and short-term and long-term investments compared to $277.3 million as of December 31, 2010.

**Recent Highlights:**

- In addition to the $28.1 million in revenue in the first quarter, sales of PROVENGE® (sipuleucel-T) in April 2011 were approximately $15 million, reflecting increasing demand and increasing utilization of its newly approved capacity. Dendreon continues to expect revenue this year of between $350-400 million with approximately half of that anticipated in the fourth quarter.

- The number of accounts infusing PROVENGE as of March 31, 2011 increased from approximately 50 to approximately 135 and we are on track to meet our goal of 225 sites infusing PROVENGE by the end of Q2.

- The U.S. Food and Drug Administration (FDA) approved the expanded New Jersey manufacturing facility. The 36 additional workstations will come online in a staged approach.

- Dendreon filed for FDA approval of the Los Angeles area manufacturing facility and has an action date of June 30, 2011.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

- Dendreon filed for FDA approval of the Atlanta facility on April 28 and expects a decision in late August or early September.

- The Centers for Medicare and Medicaid Services (CMS) issued a proposed decision memo supporting the on-label coverage of PROVENGE.

- Dendreon selected a contract manufacturing organization in Europe and a location for a manufacturing facility outside Frankfurt, Germany.

36.    Again, conditioning investors to believe that Provenge was being accepted by the medical community according to plan, in addition to the foregoing, defendant Gold was quoted in the May 2, 2011 release, as follows:

"We are proud of our accomplishments as we continue to expand the launch of PROVENGE. Our recent increased sales and marketing efforts have had an impact, and we will continue to build on this momentum as we bring additional capacity online throughout this year to make PROVENGE more broadly available," said Mitchell H. Gold, M.D., president and chief executive officer.

37.    As shares of the Company continued to trade at high levels, also on May 2, 2011, defendants filed with the SEC the Company's Form 10-Q, for the quarter ended March 31, 2011, signed by defendants Gold, Schiffman, and Bishop and certified by defendants Gold and Schiffman. In addition to making substantially similar statements concerning the Company operations, including expenses and costs, as had been published previously, the Form 10-Q also provided statements which attested to the purported effectiveness and sufficiency of its controls and procedures, as follows:

**ITEM 4. CONTROLS AND PROCEDURES**

(a) Disclosure controls and procedures.

Our chief executive officer and our chief financial officer, based on their evaluation of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q, have concluded that our disclosure controls and procedures are effective for ensuring that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

(b) Changes in internal control over financial reporting.

There were no changes in our internal control over financial reporting during the quarter ended March 31, 2011 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

38.     In addition to the foregoing, the Company's Form 10-Q also contained certifications by defendants Gold and Schiffman that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

1.  I have reviewed this quarterly report on Form 10-Q of Dendreon Corporation;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

     a.   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

     b.   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

     c.   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

/s/ Mitchell H. Gold, M.D.
President and Chief Executive Officer
Date: May 2, 2011

\* \* \*

/s/ Gregory T. Schiffman
Executive Vice President, Chief Financial Officer and Treasurer (Principal Financial Officer)
Date: May 2, 2011

## CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report of Dendreon Corporation (the "Company") on Form 10-Q for the quarter ended March 31, 2011, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), each of the undersigned officers of the Company certifies, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to such officer's knowledge:

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company as of the dates and for the periods expressed in the Report.

Name: /s/ Mitchell H. Gold, M.D.

Title: President and Chief Executive Officer

Name: /s/ Gregory T. Schiffman

Title: Executive Vice President, Chief Financial Officer and Treasurer (Principal Financial Officer)

Date: May 2, 2011

39.     Again, on June 30, 2011, defendants published another release that conditioned investors to believe that the Company was successfully rolling out its chief product Provenge. This release stated, in part, the following:

Dendreon Announces Increased Capacity and Significant Reimbursement Decisions Supporting Broad Availability of PROVENGE

– FDA Approves Los Angeles Immunotherapy Manufacturing Facility, CMS Announces National Coverage Decision, and Product Specific Q-Code Effective –

SEATTLE, June 30, 2011 /PRNewswire/ -- Dendreon Corporation (Nasdaq: DNDN) today announced significant milestones that support broad availability for on-label use of PROVENGE® (sipuleucel-T), the first autologous cellular immunotherapy for the treatment of asymptomatic or minimally symptomatic metastatic castrate resistant (hormone refractory) prostate cancer (mCRPC).

The U.S. Food and Drug Administration (FDA) approved the Los Angeles immunotherapy manufacturing facility on June 29, 2011. The facility includes 36 workstations, and Dendreon will bring these on in a staged approach.

In addition, the Centers for Medicare and Medicaid Services (CMS) issued a final National Coverage Decision (NCD) for PROVENGE on June 30, 2011, requiring Medicare contractors to cover the use of PROVENGE for treatment of asymptomatic or minimally symptomatic metastatic castrate resistant (hormone refractory) prostate cancer. The NCD will standardize coverage processes across the country for all Medicare patients with asymptomatic or minimally

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

symptomatic metastatic castrate resistant (hormone refractory) prostate cancer and provides the local Medicare Administrative Contractors (MACs) specific criteria, consistent with the label, on how PROVENGE should be covered.

PROVENGE was issued a product specific Q-code effective July 1, 2011, which allows for electronic submission of claims and is expected to accelerate time to payment for physicians.

As part of this expanded access, Dendreon supports programs to provide comprehensive assistance for eligible patients seeking access to treatment with PROVENGE, including through grants to independent foundations and establishment of a patient assistance program for uninsured patients. Dendreon provides grants to independently run foundations providing qualifying patients with financial assistance for co-pays, co-insurance, and treatment related travel costs.

40.     Defendant Gold used the June 30, 2011 release in a manner indicating that Provenge was being accepted by the medical community, according to plan, by stating the following:

"These significant achievements support broad access to PROVENGE, the foundation of care for men with asymptomatic or minimally symptomatic metastatic castrate resistant prostate cancer," said Mitchell H. Gold, M.D., president and chief executive officer of Dendreon. "The increased capacity and positive National Coverage Decision by CMS in conjunction with the patient assistance programs will ensure patients who may benefit from treatment with PROVENGE have increased access to it."

41.     The statements and press releases referenced above, and the statements contained in the Company's Form 10-Q, referenced above, were inaccurate for the following reasons, among others:

a.     it was inaccurate that the Company was finding success introducing its new Provenge cancer drug according to plan, as indicated when Defendants attempted to sell this $93,000 treatment that was found to extend a patient's life by only approximately four months, that physicians were not adopting the drug over concerns of insurance reimbursement and over concerns that the drug was extremely expensive, relative to its results;

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

b.      forecasts based on physicians' immediate adoption of Provenge were dramatically inflated because the Company had not provided physicians with options to finance these expensive treatments and had not properly educated physicians on either the value of this drug or physicians' ability to be reimbursed for its extreme costs;

c.      it was also inaccurate that Dendreon contained adequate systems of internal operational or financial controls, such that Dendreon's reported financial statements were true, accurate or reliable; and

d.      as a result of the aforementioned adverse conditions which defendants failed to disclose, it was inaccurate that Dendreon was operating according to plan, or that Dendreon could achieve guidance sponsored and/or endorsed by defendants.

**The True Financial and Operational Condition of Dendreon is Belatedly Disclosed**

42.      On August 3, 2011, after the close of trading, Defendants shocked investors after Dendreon issued a release which announced financial and operational results well below analysts' expectations – and significantly lowered guidance for 2011. Following the publication of this release, shares of the Company declined over 60%, or over $22.00 per share, to reach a multi-year low of $13.39 per share when trading opened on August 4, 2011.

43.      Immediately after investors incurred these massive losses, Bloomberg reported, in part, the following:

Dendreon Scraps Sales Forecast on Slow Prostate Drug Sales; Shares Plunge

Dendreon Corp. (DNDN) withdrew its sales estimates for 2011, saying the use of the prostate cancer drug Provenge isn't growing as fast as anticipated. Shares plunged more than 60 percent in extended trading.

Dendreon, based in Seattle, previously estimated revenue of $350 million to $400 million during the year. The company still believes the market size for Provenge is substantial, though it expects modest increases in sales each quarter for the remainder of the year, Chief Executive Officer Mitchell Gold said today in a statement.

The main stumbling block for Provenge use is the lack of knowledge about insurance coverage, Gold said. The Centers for Medicare & Medicaid Services

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 732-3752

issued a final ruling in June saying the $93,000 treatment is "reasonable and necessary" for men with advanced, prostate tumors resistant to hormone therapy who have minimal or no symptoms.

* * *

Dendreon dropped $21.92, or 61 percent, to $13.92 at 6:35 p.m. New York time in extended trading on the Nasdaq Stock Market after gaining 2.5 percent to close at $35.84 before the company's announcement. Shares had gained 2.6 percent this year.

New Production

Provenge, the first approved therapy that trains the body's immune system to attack cancer cells as if they were a virus, generated $48 million last year. Analysts surveyed by Bloomberg forecast revenue hitting $370 million this year if the company boosts its capacity by expanding the New Jersey plant and adding new manufacturing sites in Los Angeles and Atlanta.

Instead, the company will reduce its expenses and eliminate positions to meet the lower demand for the product, Gold said. The company didn't specify how many jobs would be lost.

Dendreon reported a second-quarter loss of 79 cents per share, greater than the 71 cents average estimate of 20 analysts surveyed by Bloomberg. Sales of Provenge were $49.6 million, short of the $57.7 million analysts expected.

Falling short on earnings was disappointing and pulling the forecast for the entire year is worse, said Christopher Raymond, an analyst at Robert W. Baird in Chicago, in a note to investors today. The previous estimate assumed sales of Provenge would double in the third and fourth quarters, he said.

"Depending on the definition of 'modest,' this new guidance could infer revenue of under $200 million for fiscal year 2011," he wrote.

44.     In addition to the foregoing, *Reuters* also reported, in part, the following:

Dendreon pulls forecast as Provenge falls short

* Q2 EPS loss $0.79 vs Street view loss $0.71

* Revenue $49.6 million

* Withdraws full-year forecast; sees only modest growth

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

\* Shares fall 62 percent

NEW YORK, Aug 3 (Reuters) - Dendreon Corp (DNDN) on Wednesday reported far lower-than-expected second-quarter sales of the prostate cancer vaccine Provenge and withdrew its full-year revenue forecast, sending its shares into a tailspin.

\* \* \*

"There's something wrong here and I don't think anyone really knows exactly what it is," said Cowen and Co analyst Eric Schmidt.

"They didn't post second quarter sales near where we would have hoped and guided down and admitted there's little visibility about where this drug is going over the next several quarters," Schmidt said. "I'd expect the stock to be down sharply when it opens tomorrow."

Dendreon said clarity over reimbursement for the drug that costs about $93,000 for a three-infusion course of treatment and physician comfort with the vaccine "will take time."

"For the remainder of 2011, the launch trajectory will reflect a more gradual adoption of Provenge," Chief Executive Mitchell Gold said in a statement.

The company had previously cited manufacturing constraints for holding back Provenge sales, but was now pointing to "reimbursement headwinds."

The majority of physicians are unaware of a recent positive national reimbursement ruling for Medicare patients, Gold told analysts on a conference call, adding that educating doctors will be a top priority for the sales force.

He said community urologists and oncologists are much more concerned about making certain they will get paid than those at academic medical centers, which represented the vast majority of early prescribers.

45.    Similarly, *The Wall Street Journal* also reported on the Dendreon stock collapse, stating in part, the following:

Setback for Dendreon Cancer Drug

\* \* \*

Chief Executive Mitchell Gold said Wednesday that the launch of the drug will have a "more gradual trajectory" than previously expected because of

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

"reimbursement knowledge" related to the drug. That means that the process of getting reimbursed is difficult enough for doctors that it is discouraging use of the treatment.

Until now, the company had been working to increase its manufacturing capacity in order to meet U.S. patient demand. As recently as May, Dendreon projected full year revenue of $350 million to $400 million, but now sees only "modest" sequential quarterly growth above its second-quarter revenue of $49.6 million.

46.     Finally, an article on The Street entitled "Dendreon: Parsing Provenge's Problems" (August 4, 2011), stated in part, the following:

Is lack of patient demand for Provenge the real reason behind the shortfall? The important question was asked on Dendreon's conference call. Dendreon denies any drop in the number of prostate cancer patients who want to be treated with Provenge, yet it is curious and troubling that the reimbursement issue that now plagues the drug was only discovered in July when manufacturing supply constraints began to ease.

Dendreon says the problem with reimbursement was only discovered in July as the company began signing up increasing numbers of community and private practice doctors who are more susceptible to reimbursement challenges than doctors who work at large academic medical centers.

That sounds plausible, but Dendreon also blamed its new woes on the inability of doctors to identify patients in their practice who are eligible for Provenge. Often, the company says, doctors don't screen prostate cancer patients until it's too late and their prostate cancer has advanced to the point where using Provenge becomes impractical or more difficult to justify reimbursement.

OK, but spun another way Dendreon's explanation could easily be construed as doctors being skeptical about Provenge's efficacy and survival benefit claims, thereby not bothering to push Provenge to patients even if they're eligible. Or patients, even when presented with the option of Provenge treatment (and told about the high cost) are saying "No, thanks."

Expect the debate about Provenge reimbursement issues versus patient demand to continue in the absence of real numbers from Dendreon.

* * *

Dendreon executives, most notably CEO Mitch Gold, sold a lot of Dendreon stock in July, right around the time that Provenge's reimbursement issues were

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

coming into their view. To be fair, many of the insider stock sales were pre-scheduled, but still, the optics aren't pretty.

## CERTAIN DEFENDANTS' ILLEGAL INSIDER TRADING

47. During the Relevant Period and while in possession of material undisclosed information, the following Defendants sold personally held shares of Dendreon stock:

**Mitchell Gold**

| Date | Shares | Value per Share | Total |
|---|---|---|---|
| 03/03/2011 | 19,000 | $33.03 | $627,505 |
| 03/25/2011 | 19,000 | $33.21 | $630,990 |
| 04/15/2011 | 3,986 | $42.40 | $169,006 |
| 04/17/2011 | 2,122 | $42.40 | $89,972 |
| 04/21/2011 | 1,281 | $40.89 | $52,380 |
| 04/25/2011 | 19,000 | $40.71 | $773,490 |
| 05/25/2011 | 19,000 | $40.00 | $760,000 |
| 06/27/2011 | 19,000 | $38.69 | $735,110 |
| 07/15/2011 | 3,986 | $38.80 | $154,656 |
| 07/17/2011 | 2,122 | $38.80 | $82,333 |
| 07/21/2011 | 1,281 | $39.13 | $50,125 |
| 07/25/2011 | 19,000 | $38.37 | $729,030 |
| **Total:** | | | **$4,854,597** |

**Gregory Schiffman**

| Date | Shares | Value per Share | Total |
|---|---|---|---|
| 04/17/2011 | 538 | $42.40 | $22,811 |
| 04/21/2011 | 309 | $40.89 | $12,635 |
| 07/15/2011 | 1,936 | $38.80 | $75,116 |
| 07/17/2011 | 741 | $38.80 | $28,750 |
| 07/21/2011 | 427 | $39.13 | $16,708 |
| **Total:** | | | **$156,020** |

**Gerardo Canet**

| Date | Shares | Value per Share | Total |
|---|---|---|---|
| 06/03/2011 | 5,000 | $41.38 | $206,900 |
| **Total:** | | | **$206,900** |

**Bogdan Dziurzynski**

VERIFIED SH'HOLDER DERIV. COMPLAINT     - 20 -

| Date | Shares | Value per Share | Total |
|------|--------|-----------------|-------|
| 03/11/2011 | 33,000 | $32.93 | $1,086,690 |
| **Total:** | | | **$1,086,690** |

**David Urdal**

| Date | Shares | Value per Share | Total |
|------|--------|-----------------|-------|
| 03/29/2011 | 85,716 | $35.00 | $3,000,060 |
| 04/15/2011 | 14,211 | $41.58 - $42.12 | $595,000 |
| 04/18/2011 | 2,035 | $41.68 | $84,818 |
| 04/21/2011 | 1,016 | $41.04 | $41,696 |
| 07/15/2011 | 5,312 | $39.19 | $208,177 |
| 07/17/2011 | 2,035 | $38.43 | $78,205 |
| 07/21/2011 | 1,015 | $38.75 | $39,331 |
| **Total:** | | | **$4,047,287** |

## DEMAND WOULD BE FUTILE

48.     Plaintiff brings this action derivatively in the right and for the benefit of Dendreon to redress injuries suffered and to be suffered by Dendreon as a result of the breaches of fiduciary duty and other wrongdoing by the Individual Defendants.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

49.     Plaintiff is an owner of Dendreon common stock and was an owner of Dendreon common stock during the time period in which the Individual Defendants' wrongful course of conduct alleged herein was occurring through the present.

50.     Plaintiff will adequately and fairly represent the interests of Dendreon and its shareholders in enforcing and prosecuting its rights.

51.     At the time Plaintiff filed this derivative action, the Dendreon Board consisted of the following nine (9) members: Defendants Bayh, Brewer, Canet, Dziurzynski, Gold, Granadillo, Stump, Urdal and Watson.

52.     Plaintiff has not made a demand on the Board of Directors to bring the causes of action alleged herein because such a demand would be futile.  Dendreon's Board of Directors is unable to make an impartial determination as to whether to institute legal proceedings to redress the wrongdoing alleged herein because a majority of its members (1) face a substantial likelihood

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 732-3752

of liability for non-exculpated breaches of their fiduciary duties to the Company by their participation or acquiescence in the wrongdoing alleged herein and/or complete failure to perform their oversight duties to the Company, failure to oversee the Company's compliance with legally mandated disclosure standards, and systemic failure to assure that a reasonable information and reporting system existed, and/or (2) are not independent from members of Dendreon's Board of Directors who face a substantial likelihood of liability.

**Substantial Likelihood of Liability for the Entire Board of Directors**

53. The Director Defendants acted in bad faith by breaching their fiduciary duties in failing to adequately manage and oversee the Company which has, as alleged herein, severely impacted the Company's financial condition and future prospects.

54. Director Defendants Urdal and Gold were defendants in the previous securities class action litigation, *McGuire, et al. v. Dendreon Corp., et al.*, W.D. Wash. Case No. 07-cv-800. Director Defendant Gold is a defendant in the currently-pending related securities class action *Frias v. Dendreon Corp.*, et al., W.D. Wash. Case No. 11-cv-1291. Because of this related litigation, Director Defendants Urdal and Gold are fatally conflicted and unable to render a disinterested decision as to whether the Company should pursue derivative claims.

55. Provenge is Dendreon's key product, and as such is the Company's core business. All Defendants had considerable knowledge concerning the Company's roll-out and marketing of Provenge.

56. Dendreon's Corporate Governance Principles (the "Corporate Principles") clearly delineate the duties and responsibilities of the Board of Directors. By failing to follow these corporate guidelines, the Defendant Directors caused irreparable harm to the Company amounting to millions of dollars and potentially threatening Dendreon's ability to exist in the future. As a result of the Director Defendants' failure to follow the Corporate Principles and to carry out their fiduciary duties, Dendreon misled its investors and the general public regarding its ability to market its key product, Provenge.

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

57.     Dendreon's Corporate Principles explain that "the Board of Directors, assisted by its committees, directs the affairs of Dendreon Corporation" and that "[t]he Board recognizes that the long-term interests of the stockholders are advanced by following best practices for corporate governance, maintaining the highest standards for ethical behavior, and requiring active participation by directors."

58.     Each Director Defendant had a duty to diligently evaluate information provided to the Board by management and to ensure that reasonable systems of reporting existed such that all relevant information. It was the duty of the Director Defendants to properly evaluate this information and provide thorough guidance and governance to the Company. The Director Defendants failed in these duties. The Director Defendants either evaluated this information and rubber-stamped Dendreon's misrepresentations or failed to ensure information necessary to prevent the misrepresentations was provided to them.

59.     Each of the Director Defendants faces a substantial likelihood of liability in this action because of his or her failure, as a director, to assure that reliable systems of financial controls were implemented and functioning effectively to prevent the Company from improper financial reporting.  The dramatic breakdowns and gaps in those controls were so widespread and systemic that each of the Director Defendants faces substantial exposure to liability for their abrogation of their fiduciary duties.

60.     Defendants Gold, Schiffman, and Bishop directly attested and approved, by their signatures, the statements made by Dendreon in the Company's 10-Q for the first quarter of 2011 filed with the SEC.  This Form 10-Q failed to reveal that the Company was having difficulty marketing its key, and only, product, Provenge.

61.     Because each of the Director Defendants faces a substantial likelihood of liability for unexculpated breaches of duty, demand is excused.

**Additional Substantial Likelihood of Liability for the Audit Committee Members**

62.     Defendants Watson (Chair), Canet, and Granadillo were, during the relevant period and presently, members of the Audit Committee of the Company's Board of Directors.

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

63.     Dendreon's lack of adequate internal controls rendered its Relevant Period financial reporting inherently unreliable and precluded the Company from preparing financial statements that complied with GAAP.  As a result of the material weaknesses in the Company's internal control over financial reporting, Dendreon filed misleading financial statements during the Relevant Period.

64.     The Audit Committee is responsible, by its Charter, for preparing, reviewing, and discussing with management and independent auditors, Dendreon's financial statements. The Audit Committee is also responsible for discussing Dendreon's internal audit function and reviewing reports concerning the Company's operation of internal controls. Thus, the Audit Committee was responsible for overseeing and directly participating in Dendreon's financial reporting process.

65.     The responsibilities of the Audit Committee, as specifically delineated in the Audit Committee Charter, are stated in relevant part as follows:

- Review and discuss with the independent auditor: (a) its audit plans, and audit procedures, including the scope, fees and timing of the audit; (b) the results of the annual audit examination and accompanying management letters; and (c) the results of the independent auditor's procedures with respect to interim periods.

- Review together with management the Company's guidelines and policies with respect to risk assessment and risk management, the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures.

- Discuss with the Company's General Counsel legal matters that may have a material impact on the financial statements or the Company's compliance policies. Review the committee's charter annually and recommend to the Board any necessary updates.

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

66. In spite of these specific directives, Defendants Watson, Canet, and Granadillo breached their fiduciary duties of due care, loyalty and good faith because the Audit Committee failed to disclose material facts to shareholders during the Relevant Period. These Defendants authorized the issuance of Dendreon's SEC filings and financial releases, which contained inaccurate statements about the Company's financial situation, business potential, and financial future. As members of the Audit Committee, Defendants Watson, Canet, and Granadillo were directly involved in preparing or reviewing such statements. Thus, the conduct of Defendants Watson, Canet, and Granadillo was particularly egregious in that they were members of the Audit Committee and were responsible for overseeing the Company's internal control functions during the time period in which the Company's wrongdoing occurred.

67. In light of this, and in light of Director Defendant Watson's position as Chairman of the Audit Committee, Defendants Watson, Canet, and Granadillo face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them would be futile.

**Additional Substantial Likelihood of Liability For the Insider-Selling Defendants**

68. As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, Director Defendants Gold, Canet, Dziurzynski, and Urdel knew adverse, non-public information regarding Dendreon. While in possession of this material adverse, non-public information regarding the Company, Defendants Gold, Canet, Dziurzynski, and Urdel sold Dendreon stock for total proceeds of approximately $10 million.

69. Because Defendants Gold, Canet, Dziurzynski, and Urdel received a personal financial benefit from these insider trading transactions, they are not disinterested. Moreover, Defendants Gold, Canet, Dziurzynski, and Urdel face a substantial likelihood of liability for breaches of their fiduciary duties for insider selling. Since Defendants Gold, Canet, Dziurzynski, and Urdel have breached their fiduciary duties and are not disinterested, any demand upon them would be futile.

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

**The Members of the Board of Directors Lack Independence**

70.     Director Defendant Gold serves as Dendreon's Chief Executive Officer. Gold is considered an inside director because of his employment as Chief Executive Officer of the Company and is therefore not considered an independent director. Due to Defendant Gold's employment relationship with the Company, demand upon Defendant Gold is futile.

71.     Director Defendant Urdal serves as Dendreon's Executive Vice President and Chief Scientific Officer. Urdal is considered an inside director because of his employment as Executive Vice President and Chief Scientific Officer of the Company and is therefore not considered an independent director. Due to Defendant Urdal's employment relationship with the Company, demand upon Defendant Urdal is futile.

72.     From 1988 to 1994, Director Defendant Dziurzynski was Vice President of Regulatory Affairs and Quality Assurance for Immunex Corporation. From 1982 to 1995, Director Defendant Urdal held various positions at Immunex Corporation, including Vice President and Director of Development. Because of these entangling financial alliances, interests and dependencies, Directors Dziurzynski and Urdal will not be able to vigorously prosecute any such action against each other, and so demand upon them is futile.

73.     Ultimately, Plaintiff has not made a demand on the board of directors to bring the causes of action alleged herein because such a demand would be futile and useless act for the following additional reasons:

   a. Director Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein.

   b. The Director Defendants of Dendreon, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise same. Each of the Director Defendants exhibited a sustained and systematic failure to fulfill their fiduciary duties, which could

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1    not have been an exercise of good faith business judgment and amounted to gross

2    negligence and extreme recklessness.

3          c.      In order to bring this suit, a majority of the Directors of Dendreon would

4    be forced to sue themselves and persons with whom they have extensive business and

5    personal entanglements, which they will not do, thereby excusing demand.

6          d.      The acts complained of constitute violations of the fiduciary duties owed

7    by Dendreon's officers and directors and these acts are incapable of ratification.

8          e.      Dendreon has been and will continue to be exposed to significant losses

9    due to the wrongdoing complained of herein, yet the Individual Defendants and current

10    Board have not filed any lawsuits against themselves or others who were responsible for

11    that wrongful conduct to attempt to recover for Dendreon any part of the wrongs

12    Dendreon suffered and will suffer thereby.

13          f.      The actions of the directors has impaired the Board's ability to validly

14    exercise its business judgment and rendered it incapable of reaching an independent

15    decision as to whether to accept Plaintiff's demands.

16          g.      Any suit by the directors of Dendreon to remedy these wrongs would

17    likely expose the Director Defendants and Dendreon to violations of securities laws

18    which could result in civil actions being filed against one or more of the Director

19    Defendants. Thus, they are hopelessly conflicted in making any supposedly independent

20    determination as to whether to sue themselves.

21          74.    Plaintiff has not made any demand on the shareholders of Dendreon to institute

22    the respective action since demand would be a futile and useless act for the following reasons:

23          a.      Dendreon is a publicly held company with approximately 148.86

24    million shares outstanding, and thousands of shareholders;

25          b.      Making demand on such a number of shareholders would be

26    impossible for Plaintiff, who has no way of finding out the names, addresses, or

27    phone numbers of all the shareholders; and

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

c.      Making demand on all shareholders would force Plaintiff to incur

huge expenses, assuming all shareholders could be individually identified.

75.      Dendreon has expended and will continue to expend significant sums of money as a result of the illegal and improper actions described above. Such expenditures will include, but are not limited to costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts.

### FIRST CAUSE OF ACTION

### Against the Individual Defendants

### for Breach of Fiduciary Duty

76.      Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

77.      The Individual Defendants owed and owe Dendreon fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Dendreon the highest obligation of good faith, fair dealing, loyalty and due care.

78.      The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

79.      The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company and failed to correct the Company's public announcements.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

80.      As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Dendreon has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

81.      Plaintiff, on behalf of Dendreon, has no adequate remedy at law.

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

**SECOND CAUSE OF ACTION**

**Against the Individual Defendants**

**for Abuse of Control**

82.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

83.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Dendreon, for which they are legally responsible.

84.     As a direct and proximate result of the Individual Defendants' abuse of control, Dendreon has sustained significant damages.

85.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

86.     Plaintiff, on behalf of Dendreon, has no adequate remedy at law.

**THIRD CAUSE OF ACTION**

**Against the Individual Defendants**

**for Gross Mismanagement**

87.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

88.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Dendreon in a manner consistent with the operations of a publicly held corporation.

89.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Dendreon has sustained significant damages in excess of millions of dollars.

90.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

91.     Plaintiff, on behalf of Dendreon, has no adequate remedy at law.

Law Offices of
**Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

**FOURTH CAUSE OF ACTION**

**Against the Individual Defendants**

**for Waste of Corporate Assets**

92.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

93.     As a result of the Individual Defendants' improper conduct and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Individual Defendants have caused Dendreon to waste valuable corporate assets by paying bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend the Individual Defendants' unlawful actions.

94.     As a result of the waste of corporate assets, Individual Defendants are liable to the Company.

95.     Plaintiff, on behalf of Dendreon, has no adequate remedy at law.

**FIFTH CAUSE OF ACTION**

**Against the Individual Defendants**

**for Unjust Enrichment**

96.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

97.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Dendreon.

98.     Plaintiff, as shareholder and representative of Dendreon, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by the Individual Defendants, from their wrongful conduct and fiduciary breaches.

99.     Plaintiff, on behalf of Dendreon, has no adequate remedy at law.

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

## SIXTH CAUSE OF ACTION

## Against the Individual Defendants

## for Contribution and Indemnification

100.    Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

101.    Dendreon is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein to give rise to Individual Defendants' liability to Dendreon.

102.    Dendreon's alleged liability on account of the wrongful acts and practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants as alleged above, and Dendreon is entitled to contribution and indemnification from each of the Individual Defendants in connection with all such claims that have been, are or may in the future be asserted against Dendreon by virtue of the Individual Defendants' misconduct.

## SEVENTH CAUSE OF ACTION

## Against Defendants Gold, Schiffman, Canet, Dziurzynski, and Urdel

## for Breach of Fiduciary Duties, Insider Selling, and Misappropriation of Information

103.    Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

104.    At the time of the stock sales by Defendants Gold, Schiffman, Canet, Dziurzynski, and Urdel, as set forth herein, they knew the information described herein and sold Dendreon common stock on the basis of such information.

105.    The Company's information described herein was information which had not been disclosed to shareholders, which Defendants Gold, Schiffman, Canet, Dziurzynski, and Urdel used for their own benefit when they sold Dendreon common stock.

Law Offices of
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

106. Defendants Gold, Schiffman, Canet, Dziurzynski, and Urdel's sale of Dendreon common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

107. Since the use of the Company's proprietary information for their own gain constitutes a breach of Defendants Gold, Schiffman, Canet, Dziurzynski, and Urdel's fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits they obtained thereby.

## PRAYER FOR RELIEF

Plaintiff, on behalf of Dendreon, requests judgment as follows:

A. Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to ensure that Plaintiff has an effective remedy;

C. Awarding to Dendreon restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by these Defendants;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 17, 2014          Respectfully submitted,

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
By:  s/ Cliff Cantor, WSBA # 17893
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel:     (425) 868-7813
Fax:     (425) 868-7870
Email: cliff.cantor@outlook.com

LEVI & KORSINSKY LLP
Shannon L. Hopkins
30 Broad St., 24th Fl.
New York, NY 10004
Tel:     (212) 363-7500
Fax:     (212) 363-7171

*Attorneys for Plaintiff*

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 732-3752

## VERIFICATION

I, Fang Liu, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except as to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Dated: July ___16___, 2014

_____
Fang Liu

4836-8859-2924, v. 1